UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
| Title | Margaret J. Jones v. The United States of America | | |

Present: The Honorable  **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   **[IN CHAMBERS]** Order Regarding Motions for Summary Judgment

Plaintiff and Counter-defendant Margaret M. Jones ("Mrs. Jones") moves for summary judgment against Defendant and Cross-plaintiff the United States of America ("USA"). J. Mot., ECF No. 20. USA opposes the motion. J. Opp'n, ECF No. 23. Mrs. Jones replied. J. Reply, ECF No. 25.

USA also moves for summary judgment. U. Mot., ECF No. 21. Mrs. Jones opposes the motion. U. Mot., ECF No. 22. USA replied. U. Reply, ECF No. 24.

For the following reasons, the Court **GRANTS in part** and **DENIES in part** Mrs. Jones' Motion and **GRANTS in part** and **DENIES in part** USA's Motion.

## I. BACKGROUND

### A. Undisputed Facts

The Internal Revenue Service ("IRS") determined a penalty for willful failure to file a Report of Foreign Bank and Financial Accounts (" FBAR") against the Estate of Jeffrey Jones (the "Estate") for the 2011 tax year in the amount of $1,890,074. Reply to J. SGD, ¶ 1 (ECF No. 25-2). The IRS determined a willful FBAR penalty against Mrs. Jones for the 2011 tax year in the amount of $751,685 and 2012 tax year in the amount of $770,255 (a total of $1,521,940). Id. at ¶ 2 (referring to J. Mot. Ex. B). The 2011 and 2012 penalties were based on a proration of the June 30, 2013 account balances held in her name and the accounts held jointly between her and Mr. Jeffrey L. Jones ("Mr. Jones") and was prorated between the 2011 and 2012 tax years. Id. at ¶ 3. On or around December 10, 2018, the Estate submitted a FBAR penalty payment of $4,878.95 for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 19-04950 JVS (RAOx)                                Date   5/11/20

Title   Margaret J. Jones v. The United States of America

calendar year 2011, and then on December 11, 2018, a claim for a full refund of the same penalty payment. Id. at ¶ 4.  On or around April 18, 2019, Mrs. Jones submitted a FBAR penalty payment of $4,972.00 for the calendar years 2011 and 2012, and then on April 19, 2019, a claim for a full refund of the same penalty payment. Id. at ¶ 5.

Mr. Jones was born in New Zealand in 1919 and lived there for the first thirty years of his life. Id. at ¶ 6. Mrs. Jones was born in Canada in 1928 and lived therefore the first 26 years of her life. Id. at ¶ 7.  Mr. and Mrs. Jones met in Canada, and in 1954 moved to California. Id. at ¶ 8.  Mr. and Mrs. Jones became citizens of the United States in 1969. Id. at ¶ 9. Mr. and Mrs. Jones each have a high school education, but have never had any formal tax, accounting, financial, or legal training, and never attended college. Id. at ¶ 10.  Mrs. Jones is currently 91 years old and in poor physical health. Id. at ¶ 11. On February 27, 2012, Mr. Jones and Mrs. Jones executed respective last wills and testaments.  U. SGD, ¶ 6-7, ECF No. 22-3.

       1.      The Subject Accounts

For the period at issue, Mr. and Mrs. Jones had eleven foreign accounts: three in Canada and eight in New Zealand.  Reply to J. SGD, ¶ 12.  Four of the New Zealand accounts were solely in the name of Mr. Jones (the "Jeffrey Accounts"): (1) ANZ Bank, account number ending in 1016; (2) ANZ Bank, account number ending in 1017; (3) Heartland Bank, account number ending in 026; and (4) Morrison Kent, account number ending in 9146. Id. at ¶ 13.  Three of the foreign accounts (two in Canada and one in New Zealand) were solely in the name of Mrs. Jones (the "Margaret Accounts"): (1) Royal Bank of Canada ("RBC"), account number ending in 3819; (2) RBC, account number ending in 3835; and (3) Bell Gully, account number ending in 7847. Id. at ¶ 14. Mr. and Mrs. Jones jointly held four foreign accounts (the "Joint Accounts") which are: (1) RBC, account number ending in 1922; (2) Bell Gully, account number ending in 7997; (3) ANZ Bank, account number ending in 3502; and (4) ANZ Bank, account number ending in 1015. Id. at ¶ 15.  Mrs. Jones was unaware of the existence of the Jeffrey Accounts and learned of these accounts for the first time upon his death. Id. at ¶ 16. The Jeffrey Accounts had a total maximum value of $3,787,663 for 2011 and a balance of $3,780,148 as of June 30, 2012.  U. SGD, ¶ 10.  The Joint Accounts and the Margaret Accounts held a maximum value of $3,274,431 for 2011 and a balance of $2,970,498 as of June 30, 2012. Id. at ¶ 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 19-04950 JVS (RAOx)                                  Date   5/11/20

Title   Margaret J. Jones v. The United States of America

       2.      <u>The Tax Returns</u>

      On April 9, 2012 Mr. and Mrs. Jones signed, under penalty of perjury, a federal income-tax return for tax year 2011.  U. SGD, ¶ 12.  Although Mr. and Mrs. Jones had foreign income of $251,209 for 2011, they did not report that foreign income on their tax return, thereby understating their tax by $51,104.  <u>Id.</u> at ¶¶ 13-14.[1]  Attached to the 2011 federal income-tax return was a Schedule B which discusses foreign accounts.  <u>Id.</u> at ¶¶ 15-16.  Question 7a to Schedule B of the 2011 return asks if at any time the taxpayer had "a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country?"  <u>Id.</u> at ¶¶ 17, 20.  Mr. and Mrs. Jones checked "no" in reponse.  <u>Id.</u>  Question 7a in part III to the schedule B also asks the following question: "If 'Yes,' are you required to file Form TD F 90-22.1 to report that financial interest or signature authority?  See Form TD F 90-22.1 and its instructions for filing requirements and exceptions to those requirements."  <u>Id.</u> at ¶ 18.  Mr. and Mrs. Jones owned foreign financial accounts for many years before 2011.  <u>Id.</u> at ¶ 22.  For the years 2008-2012, Mr. and Mrs. Jones understated tax resulting from their income from foreign accounts amounted to $307,056.  <u>Id.</u> at ¶ 23.

      William Burke, CPA, was Mr. and Mrs. Jones' tax preparer for over twenty-five years.  Reply to J. SGD, <u>Id.</u> at ¶ 46.  When Mr. Burke first met with Mr. and Mrs. Jones and prepared their tax returns for the first time he copied the information he received from the tax return filed by the previous preparer and asked Mr. and Mrs. Jones if there were any changes, which he continued to do year after year unless Mr. and Mrs. Jones told him there was a change.  <u>Id.</u> at ¶ 47.  Mr. Burke knew that both Mr. and Mrs. Jones previously lived in Canada.  <u>Id.</u> at ¶ 48.  Mr. Burke never asked Mr. and Mrs. Jones whether they had foreign accounts, and he never asked them about any foreign accounts when preparing their taxes.  <u>Id.</u> at ¶ 49.  Mr. Burke was not familiar with FBAR reporting requirements or foreign income reporting requirements, has not had any clients reporting foreign bank accounts, does not ask his clients about foreign bank accounts and foreign income, and does not give advice regarding foreign banking activity.  <u>Id.</u> at ¶ 50.  The notes from an IRS Agent's interview with Mr. Burke state that Mr. Burke "did not go over the [Schedule B] questions with the taxpayers" and did not review the completed

---

      [1]As will be discussed subsequently, Mrs. Jones later submitted amended joint income tax returns for 2011 reporting the income from Mr. and Mrs. Jones' foreign accounts, and paid the previously understated tax liability.  <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
|---|---|---|---|
| Title | Margaret J. Jones v. The United States of America | | |

Schedule B with the taxpayers. Id. at ¶ 52. Mr. Burke never reviewed Part 3 of the Schedule B related to "foreign accounts and trust" with Mr. and Mrs. Jones. Id. at ¶ 53. Mr. and Mrs. Jones never told Mr. Burke about their foreign accounts. U. SGD, ¶ 25. Despite receiving foreign tax statements from the foreign financial institutions, Mr. and Mrs. Jones never showed the foreign tax statements to Mr. Burke or asked him about them. Id. at ¶¶ 27-28. Mr. Burke admonished Mr. and Mrs. Jones on at least one occasion that they should contact him if they did anything that could have tax consequences. Id. at ¶ 26 (referring to Burke Dep., 21-23, 66). Mr. and Mrs. Jones did not timely file an FBAR for 2011 reporting their foreign accounts. Id. at ¶¶ 29-30.

### 3. Discovery of the Jeffrey Accounts and Subsequent Actions

Mr. Jones died on March 11, 2013 at the age of 93. Reply to J. SGD, ¶ 17. Mrs. Jones is the executor of the Estate of Jeffrey Jones. U. SGD, ¶ 9. Upon Mr. Jones' death in 2013, Mrs. Jones, on behalf of the Estate, obtained legal advice for the original purpose of determining how to handle Mr. Jones' estate and probate his new-found New Zealand will. Reply to J. SGD, ¶ 18. On June 26, 2013, Mrs. Jones filed a timely FBAR for the 2012 tax year, which was due on or before June 30, 2013. Id. at ¶ 22. On July 7, 2014, Mrs. Jones filed amended joint U.S. income tax returns, Forms 1040X, for each of the tax years 2011 and 2012, reporting all unreported income from all the foreign accounts (the Margaret Accounts, Jeffrey Accounts and Joint Accounts), paying outstanding income taxes, and checking the "yes" box on the Schedule B acknowledging the ownership of foreign accounts. Id. at ¶ 23. On March 16, 2015, Mrs. Jones filed a Domestic Streamlined Submission with the IRS which included (i) amended joint income tax returns (Forms 1040X for 2011 and 2012 that had been previously filed on July 7, 2014 and an original form 1040 for 2013 that was filed on April 15, 2014); (ii) filed outstanding FBARs for 2008 through 2013; (iii) submitted a certificate of non-willfulness, and (iv) paid a miscellaneous penalty of $156,795.26 (the "Streamlined Submission"). Id. at ¶ 24. As part of the Streamlined Submission, Mrs. Jones paid a 5% miscellaneous penalty of $156,795.26 based on the highest account balance of both the Margaret Accounts and Joint Accounts. Id. at ¶ 25. To meet the eligibility requirements for a streamlined submission, Mrs. Jones submitted a certification under penalty of perjury certifying that her failure to report her foreign accounts did not result from willful conduct. Id. at ¶ 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
|---|---|---|---|
| Title | Margaret J. Jones v. The United States of America | | |

The IRS provided no written guidance on whether an individual could make the certification on behalf of a deceased person for the purpose of entering or being included in the Streamlined Submission. Id. at ¶ 30. Mrs. Jones, as Executor of the Estate, filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return for the 2013 tax year, which disclosed Mr. Jones' foreign accounts. Id. at ¶ 31.

### 4. The IRS Investigation

The IRS's income tax and FBAR examination was conducted by IRS Agent Keli Kim (formerly Keli Stelmar). Id. at ¶ 33. Ms. Kim joined the IRS in 2010 and began her career with the IRS auditing individual income tax returns, Form 1040. Id. at ¶ 34. When Ms. Kim started working on audits related to FBARs and foreign accounts, she only received three days of classroom training related to FBARs, foreign entities, foreign issues and international issues. Id. at ¶ 35. To date, Ms. Kim has only handled three streamlined submission cases—the first being the Joneses' case. Id. at ¶ 36.

The IRS began its investigation into the Joneses on the basis that Mrs. Jones' Streamlined Submission did not list, and did not pay a 5% penalty on Mr. Jones' foreign accounts. Id. at ¶ 37. Ms. Kim disagreed with Mrs. Jones' decision to not include Mr. Jones' accounts on the Streamlined Submission and felt that she should have called the IRS's 1-800 number. Id. at ¶ 38. There was, however, no clear rule as to the process for a streamlined submission for a deceased spouse. An internal discussion at the IRS recognized that "[t]his is a unique SL case," and the Frequently Asked Questions do not "really seem to address not singing [sic] the joint certification." Id. at ¶ 39. Different IRS employees shared "[their] impressions" and agreed that not submitting a certification as to the Jeffrey Accounts is a "benign foot fault" and the IRS "will allow the surviving taxpayer spouse . . . to perfect her [non-willful] certification." Id. Other employees told Ms. Kim that Mrs. Jones could amend her Streamlined Submission to include Mr. Jones' accounts and pay the 5% penalty. Id. at ¶ 40.

The IRS's findings in support of its willfulness determination are set forth in the July 26, 2018 30-Day Letter sent to Mr. Jones (his Estate) and to Mrs. Jones on October 22, 2018. Id. at ¶ 76. These letters attached an Explanation of Items ("Revenue Agent Report" or "RAR"). Id. Each IRS Agent Determination constitutes a complete exposition of all the underlying reasons for a willfulness determination and for the amount of the penalty assessed. Id. at ¶ 77. The RAR concluded that Mr. Jones was "[a]t

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
|---|---|---|---|
| Title | Margaret J. Jones v. The United States of America | | |

best . . . willfully blind regarding his FBAR filing requirements." Id. at ¶ 58. In calculating Mr. Jones' FBAR Penalty, the IRS used the June 30, 2012 balances of the Jeffrey Accounts. Id. at ¶ 78. The IRS used the June 30, 2013 aggregate balance of the Joint Accounts and Margaret Accounts to calculate Mrs. Jones' penalty. Id. at ¶ 79. Mrs. Jones timely filed FBAR for the 2012 tax year, on or before June 30, 2013. Id. at ¶ 80. Ms. Kim stated at her deposition that Mrs. Jones' FBAR penalty was based on the 2011 and 2012 tax years because "'11 and '12 were not filed [so Ms. Kim] picked those two years and spread the penalty to the two years." Id. at ¶ 81. The IRS proposed a willful FBAR penalty at "the statutory maximum of $1,521,940. Prorated $751,685 for tax year 2011 and $770,255 for tax year 2012." Id. at ¶ 82. The June 30, 2012 balance of the Margaret Accounts and Joint Accounts (for the 2011 tax year FBAR) was $2,970.499, and a 50% penalty based on that balance would be $1,485,249.50. Id. at ¶ 83. The June 30, 2013 balance of the Margaret Accounts and Joint Accounts (for the 2012 tax year FBAR report) was $3,043,880, and a 50% penalty based on that balance would be $1,521,940. Id. at ¶ 84. The IRS ultimately assessed a total penalty in the amount of $1,521,940 (one for 2011 in the amount of $751,685, and one for 2012 in the amount of $770,255). Id. at ¶ 84; J. Mot., Ex. B. (*cf.* J. Mot., Ex. B (IRS Letter requesting payment and listing the FBAR penalty assessed as $1,521,910 with the difference resulting from the 2012 penalty listed as $770,225.00)). A penalty based on the June 30, 2012 balance the penalty would be $1,485,249.50. Reply to J. SGD, ¶ 85. The difference between what Mrs. Jones was assessed and 50% of the June 30, 2012 balance is $36,660.50 (utilizing the $1,521,910 figure). Id.

On March 31, 2020, USA conceded its claim that Mrs. Jones is liable for the FBAR penalty for calendar year 2012. ECF No. 19.

### B. Disputed Facts

The parties dispute when Mrs. Jones gained actual knowledge of the existence of the FBAR and FBAR reporting requirements. See Resp. U. SGD, ¶¶ 33-34, ECF No. 24-1; see also J. Reply to SGD, ¶¶ 19-21. Mrs. Jones contends that she learned of it after Mr. Jones' death as a result of gaining legal advice for purposes of determining how to handle Mr. Jones' will. Resp. U. SGD, ¶¶ 33-34 (referring to Mrs. Jones deposition ("Jones Depo") at J. Mot., Ex. E, 69-72). She contends that she hired professionals to help her comply with her tax and disclosure obligations as quickly as she could upon learning of such requirements. Id. at ¶ 36 (referring to Jones Depo, 73-74). Mrs. Jones

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
|---|---|---|---|
| Title | Margaret J. Jones v. The United States of America | | |

asserts that she always incorrectly understood that foreign funds would be taxed exclusively in each respective foreign country and there would be a U.S. tax obligation, only if and when such funds were brought to the United States. Id. at ¶ 39. The United States argues that by signing her 2011 tax return, Mrs. Jones was notified of the FBAR reporting requirement and further argues that this dispute is immaterial because actual knowledge is not necessary for the imposition of the willful FBAR penalty. Id. at ¶¶ 33-34, 36, 39.

The parties also dispute whether Mrs. Jones ever intentionally lied on her tax returns. See J. Reply to SGD, ¶ 55. At her deposition Mrs. Jones stated that "when I would get the income tax returns in to file, both California and US, I used to read the top half of the first page and maybe a few things on the front page, but after that, if it didn't have figures on it to do with what I was filing, I didn't bother reading it. I figured it was just paper with regular stuff on it. . . . I certainly would not have lied – not lied because I wanted to. It was because I hadn't paid attention. . . ." Jones Depo, 99-100. USA disputes that Mrs. Jones never intentionally lied because she declared under penalty of perjury that she reviewed Schedule B attached to the tax return, which they contend notified her of her FBAR reporting requirements. J. Reply to SGD, ¶ 55.

## II. LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
| Title | Margaret J. Jones v. The United States of America | | |

Anderson, 477 U.S. at 255.[2]

The moving party has the initial burden of establishing the absence of a material fact for trial. Anderson, 477 U.S. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)][3] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. See id. at 1137.

### III. DISCUSSION

#### A. Evidentiary Objections

The parties made a series of evidentiary objections within their statements of genuine disputes and the responses to such documents. When resolving a motion for summary judgment, courts may only consider admissible evidence. Fed. R. Civ. P. 56. On a motion for summary judgment, a party may object that the material used to "dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ.

---

[2] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

[3] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 19-04950 JVS (RAOx)  Date  5/11/20

Title  Margaret J. Jones v. The United States of America

P. 56(c)(2). A court must rule on material evidentiary objections. Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010).

The Court only considered admissible evidence in resolving the motion for summary judgment. When the order cites evidence to which the parties have objected, the objection is impliedly overruled. Additionally, the Court declines to rule on objections to evidence upon which it did not rely.

    **B.**    **Mrs. Jones' Motion for Summary Judgment**

        1.    <u>Whether Mrs. Jones Committed a Willful Violation Under 31 U.S.C. § 5321</u>

The Bank Secrecy Act, 31 U.S.C. §§ 5311-25, requires that United States citizens report to the Secretary of the Treasury any relationships with foreign financial accounts with balances in excess of $10,000. 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.306, 1010.350. Such relationships are required to be disclosed by means of a Report of Foreign Bank and Financial Accounts (known as the FBAR Form) (TD–F 90–22.1).[4] 31 C.F.R. § 1010.350(a). During 2011 and 2012 (the years at issue here), FBARs were required to be filed no later than "June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 1010.306(c).[5] In general if an individual violates the FBAR reporting requirements, the government may impose a civil penalty of up to $10,000 per violation. 31 U.S.C. § 5321(a)(5)(B). However, if an individual willfully violates the FBAR reporting requirements, the maximum penalty shall be increased to the greater of either (1) $100,000, or (2) fifty percent of the balance in the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C)-(D).

To be found liable for a willful violation under 31 U.S.C. § 5321(a)(5), the United States must prove the following elements by a preponderance of the evidence: (1) the person is a U.S. citizen, resident alien, or entity created under United States law; (2) the person had an interest in, or authority over a foreign financial account; (3) the account

---

[4] Since renumbered to FinCEN Report 114.

[5] The filing deadlines have since changed. See Public Law 114-41, § 2006(b)(11).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 19-04950 JVS (RAOx)                         Date  5/11/20

Title  Margaret J. Jones v. The United States of America

had a balance exceeding $10,000.00 at some point during the reporting period; and (4) the person willfully failed to disclose the account and file a FBAR. 31 U.S.C. §§ 5314, 5321(a)(5)(A); 31 C.F.R. §§ 1010.350(a) and (b).[6] The Court's review of the evidence is *de novo*. See United States v. Schwarzbaum, 2020 WL 1316232, at *7 (S.D. Fla. Mar. 20, 2020); United States v. McBride, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012). Under *de novo* review, the "analysis employed by the Commissioner is of no consequence to the district court." R.E. Dietz Corp. v. United States, 939 F.2d 1, 4 (2d Cir. 1991) (applying *de novo* review to a tax-refund matter).

Mrs. Jones argues that the IRS wrongfully determined that Mrs. Jones acted willfully and argues that willfulness requires a "voluntary, intentional violation of a known legal duty" or conscious effort to avoid learning about FBAR requirements. J. Mot., 22 (relying on the test for "willfulness" in Internal Revenue Manual ("IRM") § 4.26.16.6.5.1(1)-(3)). "Although § 5321(a)(5) does not define willfulness, courts adjudicating civil tax matters have held that an individual is willful where he/she exhibits a reckless disregard of a statutory duty." United States v. Bussell, 2015 WL 9957826, at *5 (C.D. Cal. Dec. 8, 2015) (citing Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007)). "Whether a person has willfully failed to comply with a tax reporting requirement is a question of fact." United States v. Williams, 489 F. App'x 655, 658 (4th Cir. 2012). Recklessness is an objective standard that looks to whether conduct bears of "an unjustifiably high risk of harm that is either known or so obvious that it should be known." Safeco, 551 U.S. at 57. Improper motive or bad purpose is not required to "establish willfulness in the civil context." McBride, 908 F. Supp. 2d at 1204. "Where a taxpayer makes a conscious effort to avoid learning about reporting requirements, evidence of such willful blindness is a sufficient basis to establish willfulness." Id. at 1205 (internal citation and quotations omitted); see also United States v. Bohanec, 263 F. Supp. 3d 881, 890 (C.D. Cal. 2016). Willfulness may also be proven "through inference from conduct meant to conceal or mislead sources of income or other financial information." Williams, 489 F. App'x at 658 (citing United States v. Sturman, 951 F.2d 1466, 1476 (6th Cir.1991)). The Third Circuit has clarified that "[w]ith respect to IRS filings in particular, a person 'recklessly' fails to comply with an IRS filing requirement when he or she (1) clearly ought to have known that (2) there was a grave risk that [the filing requirement was not being met] and if (3) he [or she] was in a position to find out

---

[6]There is no dispute here as to the first three elements. See Compl., ECF No. 1, ¶¶ 19-21, 24-25, 40.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
|---|---|---|---|
| Title | Margaret J. Jones v. The United States of America | | |

for certain very easily." Bedrosian v. United States of Am., Dep't of the Treasury, Internal Revenue Serv., 912 F.3d 144, 153 (3d Cir. 2018) (internal citations and quotations omitted).

The Fourth Circuit has found that signing a federal tax return, thereby declaring under penalty of perjury to have examined the return and accompanying schedules and statements, is prima facie evidence that the taxpayer "knew the contents of the return, . . . and at a minimum line 7a's directions to "[s]ee instructions for exceptions and filing requirements" for the FBAR Form. Williams, 489 F. App'x at 659 (2012); see also Norman v. United States, 942 F.3d 1111, 1116 (Fed. Cir. 2019). In other words, that the taxpayer has constructive notice of the FBAR requirements. While the Ninth Circuit does not appear to have considered whether signing a tax return puts a taxpayer on notice as to whether they need to file an FBAR, at least one District Court within the Ninth Circuit has come to the same conclusion as the Fourth Circuit. See United States v. Bohanec, 263 F. Supp. 3d 881, 890 (C.D. Cal. 2016).

Mrs. Jones argues that "imputing constructive knowledge of the FBAR filing requirements by simply signing a tax return would render the distinction between non-willful and willful violations meaningless." J. Mot., 22. Mrs. Jones relies on the more recent opinions in Schwarzbaum[7] and Flume[8] where the Southern District of Florida and the Southern District of Texas found unpersuasive the constructive knowledge theory. The Flume Court reasoned in part that such a theory ignores the distinction drawn by Congress between willful and non-willful violations of Section 5314. Flume, 2018 WL 4378161 ("If every taxpayer, merely by signing a tax return, is presumed to know of the need to file an FBAR, it is difficult to conceive of how a violation could be nonwillful." (internal citation and quotation omitted)). The Schwarzbaum Court agreeing with Flume, found that the government could not satisfy their burden on the issue of willfulness solely by relying on evidence that the taxpayer had signed their tax return or neglected to review them thoroughly. Schwarzbaum, 2020 WL 1316232, at *8 ("Applying the USA's suggested reasoning would lead to a draconian result and one that would preclude a consideration of other evidence presented."). USA does not address Schwarzbaum or

---

[7]2020 WL 1316232 (S.D. Fla. Mar. 20, 2020).

[8]United States v. Flume, 2018 WL 4378161, at *7 (S.D. Tex. Aug. 22, 2018) (Declining to follow the holdings in Williams and McBride).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
|---|---|---|---|
| Title | Margaret J. Jones v. The United States of America | | |

Flume.

    This Court finds persuasive the reasoning in Bohanec, Williams, Norman, and McBride that signing a tax return and declaring under penalty of perjury to have examined the return and accompanying schedules and statements, is evidence that the taxpayer was provided constructive knowledge of the FBAR requirements. Such a finding does not ignore the distinction drawn by Congress between a willful and non-willful violation because "an FBAR violation would generally not be willful where a taxpayer did not know about, and had no reason to know about, her overseas account." Norman, 942 F.3d at 1115. Thus, there exists ways in which a violation would be non-willful. Mrs. Jones' reliance on interpretations of the IRM on willfulness are unconvincing because as Mrs. Jones recognizes the IRM is non-binding, and does "not have the force of law." Bohanec, 263 F. Supp. 3d at 889 (citing Fargo v. Commissioner of Internal Revenue, 447 F.3d 706, 713 (9th Cir. 2006); Kimdun Inc. v. United States, 202 F.Supp.3d 1136, 1146-47 (C.D. Cal. Aug. 15 2016)); see also Norman, 942 F.3d at 1115 ("It is well settled, however, that the IRM is not legally binding on courts.").

    While signing the initial tax return falsely indicating no interest in a foreign bank account supports a finding of recklessness, and serves as prima facie evidence of such, prima facie evidence can still be rebutted. Mrs. Jones goes on to argue accurately that generally taxpayers who have willfully violated the FBAR reporting requirements have been "bad actors" who have hid assets or lied about foreign assets. J. Mot., 23. Unlike such "bad actors" Mrs. Jones argues that she did not engage in any conduct showing intent to hide her foreign accounts or having been willfully ignorant of the FBAR reporting requirements. Id. at 26. It is true that unprompted by the Internal Revenue Service Mrs. Jones filed Qualified Amended Tax Returns ("QARs") acknowledging her foreign accounts on Schedule B, paid the taxes on such foreign accounts, entered the newly offered Streamlined Submission Program to file the tardy FBARs, paid a 5% miscellaneous penalty, and submitted a certification of non-wilfulness. Reply to J. SGD, ¶¶ 24-26. Furthermore, Mrs. Jones notes that even though her tax preparer, Mr. Burke, knew that she and Mr. Jones lived in Canada, he never asked them if they had foreign accounts and in fact, was not even familiar with FBAR requirements. Id. at ¶ 48-50. USA argues that whether Mrs. Jones was a bad actor is irrelevant because "subjective motivations and the overall 'egregiousness' of [] conduct, [] are not required to establish willfulness." Bedrosian, 912 F.3d at 153. While that may be so, it is unclear whether Mrs. Jones "(1) clearly ought to have known that (2) there was a grave risk that [the filing

Case 2:19-cv-04950-JVS-RAO   Document 28   Filed 05/11/20   Page 13 of 20   Page ID #:1953

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
|---|---|---|---|
| Title | Margaret J. Jones v. The United States of America | | |

requirement was not being met] and if (3) he [or she] was in a position to find out for certain very easily." Id. The undisputed facts cut both ways.

First, Mrs. Jones relied on her tax preparer, Mr. Burke, who was unaware of the FBAR filing requirements. "Courts have frequently held that "reasonable cause" is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken." United States v. Boyle, 469 U.S. 241, 250 (1985). However, reliance by a lay person on an accountant or attorney "cannot function as a substitute for compliance with an unambiguous statute." Id. at 251 (finding that failure to make a timely filing of a tax return was not excused by the tax payers reliance on an agent). While USA points to several Ninth Circuit cases to argue that it was Mrs. Jones' duty to know of her obligation to report her foreign accounts on an FBAR and timely file the FBAR, each of these cases are distinguishable because they involve clear obligations such as filing deadlines and none of them shed light on whether the obligation to file an FBAR is unambiguous. See Knappe v. United States, 713 F.3d 1164, 1169-70, 1173 (9th Cir. 2013); Conklin Brothers v. United States, 986 F.2d 315, 317 (9th Cir. 1993); Baccei v. United States, 632 F.3d 1140, 1149 (9th Cir. 2011).

USA also argues that a reliance-on-professional-advice defense is expressly prohibited because reasonable cause exceptions do not apply to willful violations. J. Opp'n, 14 (citing 31 U.S.C. § 5321(a)(5)(C)(ii)). However, this Court like the Schwarzbaum court finds the reasoning in Boyle to be persuasive as to whether the violations of the FBAR reporting requirement were willful. See Schwarzbaum, 2020 WL 1316232, at *9 (S.D. Fla. Mar. 20, 2020). Specifically, that where an accountant or attorney advises on a matter of tax law, it is reasonable for the taxpayer to rely on that advice. Here, Mr. Burke did not ask whether Mr. and Mrs. Jones had foreign accounts when preparing their taxes, was unaware of the FBAR requirements, and there is evidence that Mr. Burke did not review the Schedule B questions with Mr. and Mrs. Jones, which lends support to the argument that Mrs. Jones violation was not willful. However, there is also evidence that Mr. and Mrs. Jones had received foreign tax statements from foreign financial institutions, and never showed them to Mr. Burke, which supports finding of reckless conduct.

Second, Mrs. Jones argues that because she filed a QAR, which is not an express requirement by the IRS, it precludes a finding of willfulness. J. Mot., 27-28. Mrs. Jones

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 19-04950 JVS (RAOx) Date 5/11/20

Title Margaret J. Jones v. The United States of America

concludes that such good-faith efforts to comply with tax obligations provide immunity from accuracy-related penalties. Id. at 28. The United States argues that Mrs. Jones' subsequent attempts to remedy her returns through the Streamlined Domestic Offshore Procedures program do not negate a finding of willfulness because they are subsequent actions that have no impact on whether she acted recklessly when she was obligated to file the FBAR in 2012. J. Opp'n, 11. USA submits that the "damage of not reporting over 30 years of foreign income had already been done" by the time Mrs. Jones filed amended returns in 2014. Id. However, a QAR "may have the effect of preventing or reducing liability for the accuracy-related penalty by substituting the tax shown on the amended return for the tax shown on the return as originally filed." Bergmann v. Comm'r, 98 T.C.M. (CCH) 599 (U.S.T.C. 2009), 2009 WL 4861128, *2. Although "actual knowledge of the duty to report interest in a foreign account" is not required for an FBAR violation,[9] upon hiring legal counsel who advised her of her FBAR filing requirements, without any prompting from the IRS, Mrs. Jones promptly filed amended returns, voluntarily submitted the tardy FBARs through the Streamlined Submission Program, paid a penalty, and submitted a certification of non-wilfulness. These subsequent facts lend circumstantial support to Mrs. Jones' arguments that her initial violation was not willful.

Ultimately, willfulness is a finding of fact and the fact that Mrs. Jones signed her tax return under the penalty of perjury is prima facie evidence that she had constructive knowledge of the FBRA requirements. Such evidence creates a genuine dispute of material fact as to whether she engaged in a willful violation. Accordingly, Mrs. Jones is not entitled to summary judgment on the issue of willfulness.

> 2. Whether the IRS Acted Arbitrarily and Capriciously in Calculating the Penalty

Mrs. Jones argues that even if she acted willfully, the IRS acted arbitrarily and capriciously in determining the maximum penalty because it improperly used the 2013 balance in calculating the 2011 penalty. J. Mot., 28-29. Specifically, Mrs. Jones contends that the IRS proposed a penalty of $1,521,940, or 50%, the statutory maximum of the 2013 balance, and prorated it between 2011 and 2012 to assess two penalties in the amount of $751,695 for the year 2011 and $770,255 for the year 2012. Id. Since the

---

[9]See Schwarzbaum, 2020 WL 1316232, at *8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 19-04950 JVS (RAOx)  Date  5/11/20

Title  Margaret J. Jones v. The United States of America

2012 penalty should not have been assessed because Mrs. Jones filed a timely, but incomplete FBAR for 2012, Mrs. Jones argues that the penalty was not calculated according to law, since it should have been calculated with only the 2011 year as the base. Id. As a result, Mrs. Jones concludes that she was imputed an additional $36,660.50 penalty. Id. at 30.

The penalty amount is reviewed for abuse "of discretion under the 'arbitrary and capricious' standard of the Administrative Procedure Act. 5 U.S. § 706." United States v. Williams, 2014 WL 3746497, at *1 (E.D. Va. June 26, 2014). "While the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency, the agency nevertheless must examine the relevant data and articulate a satisfactory explanation for its action. In reviewing that explanation, a court must consider whether the decision was based on a consideration of the relevant factors and whether there was a clear error of judgment." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 30–31 (1983).

31 U.S.C. § 5321(a)(5)(C)-(D) requires that the amount of the penalty not exceed the maximum which is 50% of the amount of "the balance in the account at the time of the violation." Here, the amount of the penalty resulted in a 25% penalty for 2011, which was well below the maximum 50% penalty despite having been calculated from the 2013 balances. Nonetheless, "[t]he statute is clear that the amount to be assessed is 50% of the balance in the account at the time of the violation." Schwarzbaum, 2020 WL 1316232, at *13 (S.D. Fla. Mar. 20, 2020). Here, like in Schwarzbaum, the evidence reflects that the IRS' penalty was based on inappropriate data that should not have been considered in assessing the penalty. While the end result was well within the maximum allotted for in the statute, the calculation of the penalty was "arbitrary and capricious."

Should willfulness be found at trial, the Court will remand the action to the IRS for recalculation. While Mrs. Jones argues that setting aside and vacating the penalty would be the appropriate remedy, the Supreme Court has clarified that "If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." Fla. Power & Light Co. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
|---|---|---|---|
| Title | Margaret J. Jones v. The United States of America | | |

Lorion, 470 U.S. 729, 744 (1985). The Court is unconvinced by Mrs. Jones argument that remand would be futile because the time period to assess penalties under the agreement entered into by the IRS and Mrs. Jones (a "Consent to Extend the Time to Assess Civil Penalties Provided by 31 U.S.C. § 5321 for FBAR Violations") has expired. If the Court remands to the IRS this would not be a new assessment of penalties, but rather a recalculation of the initial penalty based upon an upheld finding of willfulness.

Accordingly, the Court grants summary judgment and finds that the IRS acted "arbitrarily and capriciously" in calculating the penalty.

> 3.  Whether the IRS Acted Arbitrarily and Capriciously in Making a Willfulness Determination

Mrs. Jones also argues that the Court should also set aside the IRS's willfulness determination without having to independently determine whether the Mrs. Jones' conduct rises to the level of "willfulness" because it acted "arbitrarily and capriciously" by not considering all of the relevant factors and making clear errors in judgment. J. Mot., 31. However, the appropriate standard for review of the willfulness determination is de novo as discussed by the Court above. See United States v. Schwarzbaum, 2020 WL 1316232, at *7 (S.D. Fla. Mar. 20, 2020); United States v. McBride, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012). Accordingly, the Court denies summary judgment as to whether the IRS acted arbitrarily and capriciously in making a willfulness determination.

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Mrs. Jones' motion.

### C. USA's Motion for Summary Judgment

> 1. Whether Mrs. Jones' Violation was Willful

USA argues that the undisputed evidence on the record shows that Mrs. Jones willfully failed to report her foreign accounts. U. Mot., 14. USA argues that the IRS gives notice of the FBAR-reporting requirement to every taxpayers who files a Schedule B because Schedule B specifically asks "At any time during 2011, did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country?" and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-04950 JVS (RAOx) | Date | 5/11/20 |
| Title | Margaret J. Jones v. The United States of America | | |

warns taxpayers by stating: "If 'Yes,' are you are required to file TD F 90-22.1 [FBAR] to report that financial interest or signature authority?" Id. at 15-16. Because Mrs. Jones falsely answered "no" to such question and declared under penalty of perjury that she reviewed her return and accompanying schedules, USA concludes that Mrs. Jones had constructive knowledge of the FBAR reporting requirements. Id. at 16. USA argues that once she was placed on notice, Mrs. Jones could have easily found out about them by reading her federal income-tax return or talking to her tax-return preparer. Id. at 18. Therefore, USA argues the conditions for recklessness in Bedrosian are met because Mrs. Jones clearly ought to have known that there was a grave risk that the filing requirement was not being met and she was in a position to find out for certain very easily. See 912 F.3d at 153. USA also argues that Mrs. Jones' failure to mention her foreign accounts or show the foreign tax-reporting statements she received to her longtime tax-return preparer, William Burke, is evidence of recklessness. Id. at 18.

The Court agrees that Mrs. Jones failure to mention her accounts or show the foreign account tax statements to Mr. Burke cuts in favor of a finding of willfulness under the recklessness standard. Furthermore, the fact that Mrs. Jones signed her tax return under the declaration of perjury is prima facie evidence that she knew the contents of the return and at a minimum the directions in line 7a of Schedule B put her on constructive notice of the FBAR filing requirements. See Williams, 489 F. App'x at 659 (2012). However, signing a tax return on its own cannot automatically make the taxpayer's violation "willfull" as that would collapse the willfulness standard to strict liability.

Mrs. Jones argues that these three facts on their own do not establish willfulness as in every reported decision she has uncovered or are cited by USA where a finding of willfulness was made, the taxpayer was a bad actor who engaged willfully in concealment of their foreign accounts and income and the creation of complex tax avoidance schemes. U. Opp'n, 7, 11-12. Indeed, in McBride, following a bench trial the Court found willfulness where a tax payer had engaged in a complex scheme to avoid reporting foreign income through offshore shell entities including hiring a financial management firm to avoid or defer taxation. 908 F. Supp. 2d at 1189-1190, 1194. McBride also repeatedly lied to the IRS during interviews, refused to produce documents in response to the IRS, and refused to file FBARs even after the IRS specifically requested that he do so. Id. at 1199-1200. Similarly in Bohanec, following a bench trial the Court found

Case 2:19-cv-04950-JVS-RAO Document 28 Filed 05/11/20 Page 18 of 20 Page ID #:1958

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 19-04950 JVS (RAOx) Date 5/11/20

Title Margaret J. Jones v. The United States of America

willfulness where the taxpayers were sophisticated businesspeople who had a "worldwide reputation and sold and shipped to customers around the worlds. . . . [and were] sufficiently sophisticated to obtain two patents without assistance," open a bank account in Mexico, and manage the construction of a home along the coast of Mexico. Bohanec, 263 F. Supp. 3d at 889. Additionally, the taxpayers never provided the foreign bank with their home address, never told anyone other than their children of the existence of the account, never asked a lawyer, accountant, or banker about the account, or used a bookkeeper or kept books once the account was open. Id. The Court also made a credibility determination that the taxpayers' self serving statements were not credible in light of their level of sophistication. Id. Furthermore, the taxpayers had made several misrepresentations in their voluntary disclosure such as that the funds were after-tax proceeds, failed to disclose two foreign bank accounts in late filed FBARs, and proceeded to file false tax returns that did not include income from internet sales. Id. at 887-90.

In Williams, the Fourth Circuit found willfulness where the defendant had pled guilty to criminal charges of conspiracy to defraud the IRS and criminal tax evasion and acknowledged to knowing his reporting obligations and consciously choosing not to report the income to avoid taxes. Williams, 489 F. App'x at 660. Additionally, Williams provided false answers on the tax organizer provided to him by his accountant which specifically asked if he had an interest in a foreign account and testified that he "'never paid attention to any of the written words' on his federal tax return." Id. at 657, 659. The Fourth Circuit found such conduct indicative of willful blindness or intentional ignorance. Id. Finally in United States v. Ott, after a bench trial the Court found willfulness after considering circumstantial evidence and reasonable inferences through conduct meant to conceal or mislead sources of income or other financial information. 2020 WL 913814, at *5 (E.D. Mich. Feb. 26, 2020). As part of its analysis, the court considered that Ott was in continuous contact with his broker concerning foreign accounts and regularly checked the balances which were significantly disproportionally smaller than his claimed income and domestic accounts. Id. at *7. Furthermore, while acknowledging that Ott was not a sophisticated party, the Court considered evidence of concealing the foreign accounts that Ott listed his sister's address instead of his, which prevented him from seeing the reporting statements which stated that transactions "are to be reported on your annual income." Id. The Court also found not credible Ott's failure to recall withdrawing "thousands of dollars" from his foreign accounts while claiming "an income level near the poverty line." Id. What is clear from these cases is that the circumstantial evidence brought forward by Mrs. Jones is relevant to an analysis of

Case 2:19-cv-04950-JVS-RAO Document 28 Filed 05/11/20 Page 19 of 20 Page ID #:1959

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 19-04950 JVS (RAOx) Date 5/11/20

Title Margaret J. Jones v. The United States of America

willfulness.

Specifically, Mrs. Jones has submitted evidence that she relied on her tax preparer, Mr. Burke, who was unaware of FBA disclosure obligations, and despite knowing she lived in Canada, never asked if she had foreign bank accounts. While USA points to Knappe, 713 F.3d 1164, to argue that Mrs. Jones cannot rely on her accountant, Knappe is distinguishable because it involves the a non-substantive matter ascertainable to laymen, a deadline. Furthermore, Mrs. Jones submitted evidence that unprompted by the IRS she filed joint QARs for 2008-2012 acknowledging her foreign accounts on Schedule B, paid the taxes on such foreign accounts, entered the newly offered Streamlined Submission Program to file the tardy FBARs, paid a 5% miscellaneous penalty amounting to $156,795.26, and submitted a certification of non-wilfulness. While USA argues that this sheds no light on whether the violation was willful at the time it occurred, it cites to no case to support its argument that this evidence should not be taken into account. U. Reply, 5-6. The circumstantial evidence submitted by Mrs. Jones, in the light most favorable to the nonmovant, creates a genuine dispute as to whether Mrs. Jones' violation was of the FBAR reporting requirements was willful. Accordingly, USA is not entitled to judgment as a matter of law on the issue of willfulness.

### 2. Whether the Penalty Was Within the Statutory Maximum

Finally, USA argues that the penalty determined by the IRS was within the statutory maximum. U. Mot., 19. Under 31 U.S.C. § 5321(a)(5)(C)(I), the maximum penalty for a willful violation of the FBAR reporting requirements is the greater of $100,000 or 50% of the amount in the account on June 30 of the year following the reporting period. As of June 30, 2012, the total balance of the Margaret Accounts and Joint Accounts was $2,970,498. The IRS' assessed penalty of $751,685 for 2011 is 25% of the account balance and is therefore within the statutory maximum.

Mrs. Jones argues that the IRS improperly calculated the willfulness penalty by using the June 30, 2013 balance of the Margaret Accounts and Joint Accounts ($3,043,880). U. Opp'n, 26. Initially the IRS proposed a penalty of $1,521,940, or 50%, the statutory maximum, and prorated it between 2011 and 2012 to assess two penalties in the amount of $751,695 for the year 2011 and $770,255 for the year 2012. See also U. Reply to SGD, ¶ 47. Since then, USA has conceded the 2012 penalty, presumably because Mrs. Jones filed a timely although incomplete 2012 FBAR that was later

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 19-04950 JVS (RAOx) Date 5/11/20

Title Margaret J. Jones v. The United States of America

amended. See ECF No. 19. Because the prorated penalty for 2011 was based on the June 30, 2013 balances, Mrs. Jones argues that the penalty is not in accord with the law because it was not calculated using the proper base amounts at the time of the violation. U. Opp'n, 27. However, 31 U.S.C. § 5321(a)(5)(C)-(D) requires that the amount of the penalty not exceed the maximum which is 50% of the amount of "the balance in the account at the time of the violation." Here, the amount of the penalty was well below the maximum 50% penalty despite having been calculated from the 2013 balances. Therefore, USA is entitled to summary judgment as to whether the amount of the penalty was within the maximum penalty.[10]

Accordingly, the Court **GRANTS in part** and **DENIES in part** USA's Motion.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Mrs. Jones' Motion and **GRANTS in part** and **DENIES in part** USA's Motion.

**IT IS SO ORDERED.**

: 0

Initials of Preparer lmb

---

[10]The Court notes that whether the statute is within the maximum penalty, is not the same as making a finding as to whether the IRS acted arbitrarily and capriciously.